**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

CHARLES GONNERMAN,

      Plaintiff,

vs.

McHAN CONSTRUCTION, INC.,
CHRIS HANSEN CONSTRUCTION
COMPANY, and MICHAEL McCLINE,

      Defendants.

No. C 06-4064-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

————————————

**TABLE OF CONTENTS**

**I. INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**II. LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    *A. Standards For Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . . 8
    *B. Evidence Of Age Discrimination* . . . . . . . . . . . . . . . . . . . 14
        *1. Arguments of the parties* . . . . . . . . . . . . . . . . . . . . 14
        *2. "Direct" evidence of discrimination* . . . . . . . . . . . . . . . . . 17
            *a. Is the statement attributed to McCline "direct"
                evidence?* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
            *b. Is the evidence of McCline's statement inadmissible
                hearsay?* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
            *c. Is summary judgment appropriate on the ground that
                the "direct" evidence is not credible?* . . . . . . . . . . . . 23
            *d. Is there a jury question on whether the defendants
                would have made the same decision absent age
                discrimination?* . . . . . . . . . . . . . . . . . . . . . . . . 24
    *C. Constitutionality Of Summary Judgment* . . . . . . . . . . . . . . . . . . . . 25

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

In this age discrimination action, pursuant to state and federal law, the defendants seek summary judgment on the ground that there are no genuine issues of material fact that the plaintiff was laid off from his job as a construction worker because of a reduction in force (RIF) caused by lack of work. The plaintiff, however, contends that there are genuine issues of material fact as to whether or not he was laid off because of his age, in light of "direct" evidence that the vice president of the company told the plaintiff's supervisor that he was laying off the plaintiff because he was "too old to do cement work and complained too much." In the alternative, the plaintiff contends that summary judgment in the defendants' favor would violate his Seventh Amendment right to trial by jury.

## I. INTRODUCTION

### A. Factual Background

The court will not attempt here an exhaustive dissertation on the undisputed and disputed facts in this case. Rather, the court will set forth sufficient of the facts, both undisputed and disputed, to put in context the parties' arguments concerning the defendants' motion for summary judgment.[1]

---

[1] Although the plaintiff responded to the defendants' statement of undisputed facts in the manner required by N.D. IA. L.R. 56.1(b)(2), the defendants failed to respond to the plaintiff's statement of additional material facts, which had been filed pursuant to N.D. IA. L.R. 56.1(b)(3), in the manner required by N.D. IA. L.R. 56.1(d). Because the
(continued...)

Case 5:06-cv-04064-MWB   Document 31   Filed 10/26/07   Page 2 of 27

The parties agree that plaintiff Charles Gonnerman, who was in his late sixties in 2005 at the time of the events giving rise to the present lawsuit, had been employed since 1988 by defendants Chris Hansen Construction Company (Hansen), a general construction firm, and Hansen's subsidiary, McHan Construction, Inc. (McHan). Defendant Michael McCline is either the president of McHan, as the defendants allege, or the vice president of McHan, as Gonnerman alleges, and an officer and director of Hansen. Gonnerman specialized in finish carpentry and sometimes worked as a supervisor. Gonnerman also sometimes did general labor jobs, including cement or concrete work, but preferred doing finish carpentry. Indeed, Gonnerman admits that he complained about doing cement or concrete work and that he said on more than one occasion on the job at Hansen/McHan that he was too old to do cement or concrete work. Gonnerman maintains, however, that he did not complain more than anyone else about doing cement or concrete work and that he was fully qualified for and capable of doing such work.

In September 2005, Gonnerman was working with others pouring concrete on the Dickinson County Courthouse project. The defendants contend that Gonnerman was not working as a supervisor at the time, but Gonnerman contends that he was. The defendants also maintain that there was a shortage of finish carpentry work on the project at the time and, in fact, that most of the work on the project at the time was concrete work. Gonnerman denies that there was any shortage of work that he could have done, because

---

[1](…continued)

defendants have failed to respond to the plaintiff's allegations in his statement of additional facts, those allegations are deemed admitted. *See* N.D. Iᴀ. L.R. 56.1(d) ("The failure to reply, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact.").

3

there was a fair amount of finish work that had not yet been completed on the project, and he was also qualified for and capable of doing cement or concrete work.

In any event, Gonnerman's supervisor, Robert McKeever, notified Gonnerman that he was being laid off. The defendants assert that McKeever had had a conversation with Michael McCline about anticipated layoffs owing to shortage of work, including discussions about which employees to lay off. McKeever knew that Gonnerman did not like concrete work, but that concrete work was all that the company had at the time. Therefore, McKeever apparently recommended, and McCline apparently decided, that Gonnerman should be laid off until the company got into the finish carpentry work on the project. The defendants maintain that McKeever had only advisory input in the decision to lay off Gonnerman and others, but that McKeever had no authority either to lay off or hire back any employees; only McCline had that authority. Gonnerman disputes that McKeever's authority as a supervisor or superintendent was limited in the manner the defendants assert. The defendants also assert that layoff determinations about individual employees were made on the basis of the following purportedly "objective" factors: the need for employee's skills and abilities at a particular stage in the project; the employee's attitude; the employee's attendance record; and the employee's ability to function as part of a team. They contend that Gonnerman had a reputation as a complainer and that there had been complaints about his supervisory abilities, in addition to the lack of finish carpentry work for Gonnerman to do.

Gonnerman's version of the reason for his layoff, however, is quite different. Specifically, Gonnerman asserts that he was never told that he was being laid off because of a shortage of work. Rather, he contends that McKeever told him that the reason he was being laid off was that McCline felt that he was "too old to do cement work and complained too much." McCline denies ever telling McKeever any such thing. McKeever

4

also denies ever telling Gonnerman that Gonnerman was being laid off because he was too old to do cement work, that McCline had told McKeever that Gonnerman was being laid off because Gonnerman was too old to do cement work and complained too much, or even that he made any reference to Gonnerman's age at the time that he told Gonnerman he was laid off. The parties agree that Gonnerman never asked McCline the reason that he had been laid off. Gonnerman asserts, however, that the so-called "objective" factors that the defendants contend that they used to decide which employees to lay off plainly included "subjective" criteria.

The defendants maintain that, between June 2005 and February 2006, Hansen/McHan experienced a firm-wide shortage of work that required the companies to lay off approximately fifty percent of their workforce. The defendants assert that this period was the lowest point for available work in at least the last twenty-six years, perhaps in the companies' history. The defendants contend that the reduction in force (RIF) affected numerous employees in the same or similar capacity as Gonnerman and that almost half of those employees (18 out of 40) were under forty years of age and all but one were younger than Gonnerman. More specifically, of the fifteen employees working on the Dickinson County Courthouse project who were laid off, seven were under the age of forty. Gonnerman, however, maintains that, despite any RIF, there was work available that he was qualified to do and that, in the eighteen years he had worked for Hansen/McHan, he had seldom been laid off. Gonnerman also contends that one of the reasons that he was laid off was his age, because he was the second oldest worker at Hansen/McHan. Although McCline had anticipated that Gonnerman's layoff would be temporary, and several workers have been called back to work for Hansen/McHan since February 2006, Gonnerman has not been called back. The defendants point out, however, that Gonnerman has not asked to be called back.

5

Gonnerman has since found other employment in which he works primarily as a finish carpenter.

Among the allegations in Gonnerman's unanswered statement of additional facts in dispute, is Gonnerman's assertion that, when he returned to clean out his belongings and collect his tools after his layoff in September 2005, he told McKeever that it sounded like he had a basis for a lawsuit and that McKeever agreed that he had grounds for a lawsuit against the defendants. Gonnerman also alleges, again in his unanswered statement of additional facts, that, after his layoff and since other employees have been called back, his work has been performed by younger employees who had worked for the defendants for less time than he had.

Notwithstanding their failure to respond to Gonnerman's statement of additional facts in dispute, the defendants assert in their reply brief that, of the four superintendents laid off during June 2005 to February 2006, only one, Robert McKeever, has been re-employed, and that McKeever is actually one year older than Gonnerman. In a surreply allowed by the court, Gonnerman takes issue with this factual allegation as misleading, because he maintains that two of the four supervisors *could not* be re-employed by Hansen/McHan, because the companies no longer had a contract with Carpenters Local 948 to which those former superintendents belonged. Gonnerman also contends that the defendants cannot re-employ ten other persons, because the defendants' companies no longer have a contract with the union representing those former employees. Thus, Gonnerman contends that lack of work was not the reason that these employees could not return to work for Hansen/McHan, as the defendants appear to suggest. Gonnerman also asserts that one employee was not brought back because of his bad attitude, one employee left the area, and two other employees simply quit working for McHan. Thus, Gonnerman

6

contends that the defendants have had ample opportunity to rehire him or call him back to work for them.

## B. Procedural Background

Gonnerman filed suit on August 2, 2006, against defendants McHan Cosntruction, Inc., Chris Hansen Construction Company, and Michael McCline, alleging age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and the Iowa Civil Rights Act (ICRA), IOWA CODE CH. 216. *See* Complaint (docket no. 3), Counts 1 and 2, respectively. The defendants filed a joint Answer (docket no. 7) on August 24, 2006, denying Gonnerman's claims and asserting as affirmative defenses that Gonnerman has failed to state claims upon which relief can be granted; that Gonnerman was terminated as part of a general reduction in force for legitimate, non-discriminatory reasons; and that Gonnerman has failed to mitigate his damages. Trial in this matter is set to begin on January 7, 2008.

On August 31, 2007, the defendants filed the Motion For Summary Judgment (docket no. 17) now before the court, in which they seek summary judgment on both of Gonnerman's claims, then filed an amended brief in support of their Motion (docket no. 18) on September 10, 2007. After an extension of time to do so, Gonnerman filed a Resistance (docket no. 22) on October 1, 2007. The defendants then filed a Reply (docket no. 24) on October 8, 2007. With leave of court, Gonnerman filed a surreply, denominated a Brief In Support Of [His] Motion To Reply To Defendant's [sic] Reply Brief Regarding Their Motion For Summary Judgment (docket no. 28), to address what Gonnerman asserted were misleading factual allegations in the defendants' Reply.

7

No party requested oral arguments on the defendants' Motion For Summary Judgment in the manner required by N.D. Iᴀ. L.R. 56.1(f). Therefore, this matter is fully submitted on the written submissions.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

Motions for summary judgment essentially "define disputed facts and issues and. . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1982 (2007); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Any party may move for summary judgment regarding "all or any part" of the claims asserted in a case. Fᴇᴅ. R. Cɪᴠ. P. 56(a), (b) (allowing a claimant to move for summary judgment "at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party," and allowing a defending party to move for summary judgment "at any time"). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." Fᴇᴅ. R. Cɪᴠ. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v.*

8

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.* An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence"). Evidence presented by the nonmoving party that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, such as a "scintilla of evidence," *Anderson*, 477 U.S. at 252; *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997), or evidence that is "merely colorable" or "not significantly probative," *Anderson* at 249-50, does not make an issue of material fact genuine.

Thus, a *genuine issue of material fact* is not the "mere existence of some alleged factual dispute between the parties." *State Auto. Ins. Co. v. Lawrence*, 358 F.3d 982, 985 (8th Cir. 2004). "'Instead, "the dispute must be outcome determinative under prevailing law."'" *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) (quoting *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992), in turn quoting *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989)). In other words, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. Essentially, a genuine issue of material fact determination, and thus the availability of summary judgment, is a determination of "whether a proper

9

jury question [is] presented." *Id.* at 249. A proper jury question is present if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

Procedurally, the moving party does not have to "support its motion with affidavits or other similar materials *negating* the opponent's claim," *Celotex*, 477 U.S. at 323, but the moving party does bear "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Thus, a movant need only demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). Thus, the movant must show the absence of a genuine issue of material fact as it relates to the substantive law, and the nonmovant must show the alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 322; *In re Temporomandibular Joint*, 113 F.3d at 1492.

10

In considering whether a genuine issue of material fact is present the court must view all the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Mosley*, 415 F.3d at 910. Further, the court must give such party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita*, 475 U.S. at 587-88. However, "because we view the facts in the light most favorable to the non-moving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Rather than "attempt[ing] to determine the truth of the matter . . . the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

Of course, the facts are not the sole concern of the court; after all, a genuine issue of material fact necessarily depends on the substantive law. *See Holloway*, 884 F.2d at 366 ("The presence of a genuine issue of fact is predicated on the existence of a legal theory which can be considered viable under the nonmoving party's version of the facts. The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."). Moreover, summary judgement is particularly appropriate "where the unresolved issues are primarily legal rather than factual." *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996). But even if no genuine issue of material fact is present in a case, summary judgment is not appropriate unless the governing law supports the moving party's position. FED. R. CIV. P. 56(c) (requiring the moving party to also show that it "is entitled to judgment as a matter of law"). Furthermore, "the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252; *see Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir. 1998)

11

("'In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law.'" (quoting *Hartnagel*, 953 F.2d at 396)). Therefore, the court will first address the evidentiary standards of proof involved in Gonnerman's age discrimination claims, and then address the defendants' motion for summary judgment in light of the applicable standards and the factual issues presented by the parties.

Before doing so, however, the court recognizes "that summary judgment is disfavored in employment discrimination cases." *Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir. 2005); *see Woods v. Perry*, 375 F.3d 671, 674 (8th Cir. 2004) ("[S]ummary judgment should be used sparingly in employment discrimination cases. . . ."); *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994) ("[S]ummary judgment should seldom be used in employment discrimination cases."). This exceptional deference shown the nonmoving party is warranted, according to the Eighth Circuit Court of Appeals, "[b]ecause discrimination cases often turn on inferences rather than on direct evidence . . . ," *E.E.O.C. v. Woodbridge Corp.*, 263 F.3d 812, 814 (8th Cir. 2001) (*en banc*) (citing *Crawford*, 37 F.3d at 1341; *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999)), and because "intent" is generally a central issue in employment discrimination cases. *Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1071 (8th Cir. 1998) (citing *Gill v. Reorganized Sch. Dist. R-6, Festus, Mo.*, 32 F.3d 376, 378 (8th Cir. 1994)); *see Simpson*, 425 F.3d at 542 (noting summary judgment is disfavored in employment discrimination cases becuase they are "'inherently fact-based.'" (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 806 (8th Cir. 2003))). Nonetheless, this exercise of judicial prudence "cannot and should not be construed to exempt" from summary judgment, employment discrimination cases involving intent. *Christopher*, 137 F.3d at 1071 (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 959 (8th Cir. 1995)). The fact remains that

12

"'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

The court must also observe that stating the legal principles of summary judgment in employment discrimination cases is a simple task. Applying those principles to the paper record that forms the judicial crucible that decides which plaintiffs may proceed to trial and which get dismissed is far more daunting. Missing in the standard incantation of summary judgment principles is the role of experience. Justice Oliver Wendell Holmes wrote, "The life of the law has not been logic; it has been experience." OLIVER WENDELL HOLMES, THE COMMON LAW 1 (1881). Thus, experience teaches that thoughtful deliberation of summary judgment in employment discrimination cases is grounded in the consideration of each case through a lens filtered by the following observations. Employment discrimination and retaliation, except in the rarest cases, is difficult to prove. It is perhaps more difficult to prove today—more than forty years after the passage of the ADEA, which is at issue here—than during the early evolution of federal antidiscrimination laws. Today's employers, even those with only a scintilla of sophistication, will neither admit discriminatory or retaliatory intent, nor leave a well-developed trail demonstrating it. *See, e.g., Riordan v. Kempiners*, 831 F.2d 690, 697-98 (7th Cir. 1987). Because adverse employment actions almost always involve a high degree of discretion, and most plaintiffs in employment discrimination cases are at will, it is a simple task for employers to concoct plausible reasons for virtually any adverse employment action ranging from failure to hire to discharge. This is especially true, because the very best workers are seldom employment discrimination plaintiffs due to sheer economics: Because the economic costs to the employer for discrimination are

13

proportional to the caliber of the employee, discrimination against the best employees is the least cost effective. *See, e.g., id.* Rather, discrimination plaintiffs tend to be those average or below-average workers—equally protected by the ADEA—for whom plausible rationales for adverse employment actions are readily fabricated by employers with even a meager imagination. *See, e.g., id.*

Consequently, with both the legal standards for summary judgment and the teachings of experience in hand, the court turns to consideration of the parties' arguments for and against summary judgment.

### B. Evidence Of Age Discrimination

The first question raised by defendants' Motion For Summary Judgment is whether Gonnerman has presented sufficient evidence to generate a genuine issue of material fact that his age, not a RIF, was the reason that he was laid off from his job as a construction worker. The court's consideration of this question begins with a summary of the parties' arguments.

#### 1. Arguments of the parties

The defendants assert that Gonnerman has staked his entire lawsuit on what it characterizes as a stray remark made by Robert McKeever, Gonnerman's former supervisor at Hansen/McHan to the effect that Michael McCline had said that Gonnerman was being laid off because "he was too old to do cement work and complained too much." The defendants, however, contend that Gonnerman's allegation is not the least bit credible, where McKeever denies ever making any reference to Gonnerman's age when he told Gonnerman that he was laid off, and McCline also denies ever commenting on Gonnerman's age, either to McKeever or Gonnerman. Even supposing that McKeever made the alleged remark to Gonnerman, however, the defendants contend that the remark

14

is not "direct" evidence of age discrimination, because McKeever was not a decisionmaker in the decision to lay off Gonnerman and, instead, only McCline had the authority to layoff or bring back employees. More importantly, the defendants contend that the alleged statement by McKeever concerning what McCline said was the reason that Gonnerman was laid off is inadmissible hearsay subject to no exception or exemption. The defendants admit that the purported statement of McCline is not hearsay, because it is not, at least technically, being introduced for the truth of the matter asserted—*i.e.*, that Gonnerman was too old to do cement work—but to prove discriminatory animus. Nevertheless, they contend that McKeever's supposed statement recounting what McCline supposedly said is hearsay, because it *is* offered to prove the truth of the matter asserted—*i.e.*, that McCline said that Gonnerman was laid off because he was too old for cement work.

In the alternative, the defendants contend that Gonnerman has failed to generate sufficient circumstantial evidence of age discrimination for his claims to go to the jury. The only evidence that Gonnerman offers to raise the necessary inference, they contend, is the stray remark made by McKeever, which they argue is not sufficient. Moreover, they contend that there is no genuine dispute that Hansen/McHan was experiencing a bona fide RIF from June 2005 to February 2006, and that Gonnerman was laid off because of that RIF. They point to the "objective," age-neutral criteria used to determine who would be laid off and the age-neutral application of those criteria to Gonnerman. They also point to evidence that many younger employees were also laid off in the RIF. Thus, they contend that the evidence shows, beyond dispute, that Gonnerman was laid off because of the RIF, not because of his age. While they have offered legitimate reasons for laying off Gonnerman, they contend that Gonnerman has produced no evidence that the proffered reasons are a pretext for age discrimination. Finally, they point out that, even if Gonnerman's age was the reason that he was laid off, Gonnerman himself has admitted that

15

he was too old to do cement work, acknowledging the validity of the reason that he now asserts is improper.

In response, Gonnerman does, indeed, rely entirely on his contention that he has produced "direct" evidence of discrimination in the form of McCline's comment, as relayed by McKeever, and McKeever's subsequent admission that Gonnerman had the basis for an age discrimination lawsuit. Gonnerman contends that the "speaker" of the "direct" evidence statement in question was McCline, who made what the defendants concede is an admission, if he made the statement attributed to him. Gonnerman also points out that the defendants admit that McCline had the authority to lay off workers and bring them back, so that McCline was the "decisionmaker" in this case. Even supposing that McKeever was the "speaker," however, Gonnerman contends that McKeever was sufficiently involved in the lay off decision for his statement to be "direct" evidence of age discrimination, where the defendants admit that McCline consulted McKeever about which employees to lay off. The "content" of the statement in question, Gonnerman contends, was unquestionably a statement of an age-discriminatory reason for adverse employment action. Finally, he contends that there is no doubt about the "causal connection" between the age-discriminatory statement and his lay off, because his age was stated to be the reason for his lay off.

Turning to the admissibility of the statement, over the defendants' hearsay objection, Gonnerman contends that the defendants have conceded that McCline's statement, if made, was not hearsay. Gonnerman argues that McCline's statement is not hearsay, because it was an admission of the reason for Gonnerman's lay off, that McCline thought Gonnerman was too old to do cement work; because it was not offered for the truth of the matter asserted, that Gonnerman actually was too old to do cement work; and/or because it was a statement of McCline's then existing state of mind. Nor, he

16

contends, is McKeever's statement hearsay, because it was a statement by the party's agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the employment or agency relationship and, as such, was also an admission.

Gonnerman contends that, in the face of his "direct" evidence of age discrimination, the defendants have failed to show that they would have laid him off absent illegal age discrimination. Gonnerman contends that a reasonable jury could find that the supposed lack of work was not the reason that he was laid off, where he was qualified for and capable of doing the work available, which included both cement work and some finish work, and he had more experience and time with the companies than some of the younger employees who were retained. He also points out that no one ever told him that the reason he was laid off was shortage of work. Finally, he contends that several of the "objective" criteria on which the defendants contend that the lay off decisions were made were, in fact, "subjective" and, worse still, unfounded, where he was a good worker who also adequately performed supervisory responsibilities. Ultimately, he contends, a jury must determine whether or not his age played a role in the defendants' decision to lay him off.

### 2. *"Direct" evidence of discrimination*

#### a. *Is the statement attributed to McCline "direct" evidence?*

As the Eighth Circuit Court of Appeals very recently reiterated, "To establish a claim of intentional age discrimination, a plaintiff may present direct evidence of such discrimination or may prove his claim through circumstantial evidence." *Carraher v. Target Corp.*, ___ F.3d ___, ___, 2007 WL 2711919, *2 (8th Cir. Sept. 19, 2007) (citing *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 806 (8th Cir. 2003)). As the court also explained, "'[D]irect evidence is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a

reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action.'" *Id.* (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004), in turn quoting *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997)); *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 873 (8th Cir. 2007); *Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1042 (8th Cir. 2007); *Russell v. City of Kansas City, Mo.*, 414 F.3d 863, 866 (8th Cir. 2005). More specifically,

> Direct evidence "refers to the *causal strength of the proof,*" *Richardson v. Sugg,* 448 F.3d 1046, 1058 (8th Cir. 2006), meaning such evidence "must be strong enough to show a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employment decision," *Schierhoff v. GlaxoSmithkline Consumer Healthcare, L.P.,* 444 F.3d 961, 965 (8th Cir. 2006) (alteration in original) (internal quotation omitted). This category of proof "includes 'evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude,' where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor." *Id.* at 966 (quoting *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 449 (8th Cir. 1993)). Direct evidence does not include "stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." *Radabaugh,* 997 F.2d at 449 (internal quotation marks omitted).

*Morgan*, 486 F.3d at 1042-43 (emphasis in the original). Even if a jury finds "direct" evidence of discrimination, an employer can avoid liability by showing that it would have made the same decision without discrimination. *Wheeler v. Missouri Highway & Transp. Comm'n*, 348 F.3d 744, 750 (8th Cir. 2003); *Ross v. Douglas County, Nebraska*, 234 F.3d

18

391, 397 (8th Cir. 2000) ("[O]nce plaintiff introduces direct evidence of discrimination, the burden shifts to the employer to show, by a preponderance of the evidence, 'that it would have made the same decision even if it had not taken the plaintiff's [age] into account.'") (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989)).

Evidence that is not based on personal knowledge or that consists solely of unsubstantiated hearsay does not meet the "direct" evidence standard for demonstrating a specific causal link between the alleged discriminatory animus and the challenged decisions to support a finding that the plaintiff's age actually motivated the employer's adverse employment decision. *Id.* at 1043. Nor is evidence of a non-decisionmaker's perceptions of the reasons for a decisionmaker's actions "direct" evidence of a discriminatory animus. *Id.* On the other hand, actual statements of a decisionmaker that age was the reason for adverse employment action are not merely stray remarks unrelated to the decisional process itself, but "direct" evidence of age discrimination. *See EEOC v. City of Independence, Mo.*, 471 F.3d 891, 894 (8th Cir. 2006) (statements by a human resources administrator that the plaintiff was of retirement age, so that he could not draw donated leave, and that he was ineligible to utilize the donated leave program because of his age were "direct" evidence of age discrimination). "Direct" evidence of discrimination is sufficient to generate genuine issues of material fact as to what the employer supposed about the plaintiff's age, so that summary judgment should be denied. *Id.* at 896.

There can be no genuine dispute that McCline's statement that Gonnerman was "too old to do cement work and complained too much," if made, is "direct" evidence of age discrimination. The statement plainly "'"show[s] a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action.'" *Carraher*, ___ F.3d at ___, 2007 WL 2711919 at *2 (quoting

19

*Griffith*, 387 F.3d at 736, in turn quoting *Thomas*, 111 F.3d at 66). The statement is one by a person involved in the decisionmaking process; indeed, it is a statement by the person that the defendants contend had sole authority to make decisions about which employees to lay off and which to call back. *See Morgan*, 486 F.3d at 1043 ("direct" evidence includes evidence of conduct or statements of persons involved in the decisionmaking process). Moreover, the statement may be viewed as directly reflecting an age-discriminatory attitude, that is, as raising an inference that a discriminatory attitude was more likely than not a motivating factor in McCline's decision to lay off Gonnerman, *see id.* ("direct" evidence directly reflects the discriminatory attitude where it raises an inference that a discriminatory attitude more likely than not was a motivating factor), because it shows that McCline believed that, *because of Gonnerman's age*, Gonnerman could not do certain construction work. Moreover, as recounted by Gonnerman, McKeever did not simply recite his *perception* of the reason for McCline's decision to lay off Gonnerman, but purportedly recounted to Gonnerman McCline's actual statement of his reason. *Compare id.* (a non-decisionmaker's perceptions of the reasons for a decisionmaker's actions are not "direct" evidence of a discriminatory animus).

Contrary to the parties' contentions, the court finds that whether or not McKeever was also a "decisionmaker" is irrelevant to whether *McCline's* statement is "direct" evidence of age-discriminatory animus, because McKeever is not the "speaker" of the statement, only the conduit for it. Nor is the statement attributed to McCline simply a "stray remark" that was unrelated to the decisional process, but a statement of the reason for the specific decision in question. *See id.* ("stray remarks" are not "direct" evidence); *City of Independence, Mo.*, 471 F.3d at 894 (same).

Thus, this "direct" evidence of what McCline supposed about Gonnerman's age is sufficient to generate genuine issues of material fact precluding summary judgment, if such

evidence is admissible. *See City of Independence, Mo.*, 471 F.3d at 894 ("direct" evidence is sufficient to generate genuine issues of material fact about what the employer supposed about the employee's age, thus precluding summary judgment).

### b. *Is the evidence of McCline's statement inadmissible hearsay?*

The defendants contend, however, that the statements attributed to McCline consist solely of inadmissible hearsay. Again, evidence that consists merely of unsubstantiated hearsay does not constitute "direct" evidence of discrimination. *Morgan*, 486 F.3d at 1043. Here, McCline purportedly made the statement to McKeever, but the evidence of the statement must come from Gonnerman's recital of what McKeever said, because McKeever (and McCline) now deny making the statements attributed to them. In other words, there appears to be a hearsay or double hearsay (hearsay upon hearsay) problem with the evidence. The question then becomes, whether each "layer" of supposed hearsay is exempted or excepted from the hearsay rule. *See* FED. R. EVID. 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."); *Yates v. Rexton, Inc.*, 267 F.3d 793, 802 (8th Cir. 2001) (each "layer" of "double hearsay" must be admissible under a recognized hearsay exception for the evidence to be admissible); *EEOC v. HBE Corp.*, 135 F.3d 543, 552 (8th Cir. 1998) ("The fact that some of the statements came through multiple declarants does not matter so long as the test for double hearsay is met." (citing FED. R. EVID. 805)); *see also United States v. Turner*, 189 F.3d 712, 719 & n.4 (8th Cir. 1999) (expressing a preference for the term "hearsay upon hearsay" as more accurately describing the evidentiary issue than "double hearsay").

One layer of possible hearsay, however, is stripped away by the defendants' concession that the statement attributed to McCline is not hearsay, because the statement is not offered for its literal truth—that is, that Gonnerman was too old to do cement

21

work—but to show the reason for McCline's decision. *See* FED. R. EVID. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, *offered in evidence to prove the truth of the matter asserted.*") (emphasis added). Similarly, the court concludes that the statement attributed to McCline, if made, would be an admission of a party opponent of the reason for an adverse decision and, therefore, not hearsay. *See* FED. R. EVID. 801(d)(2)(A) (a party's own statement, in either an individual or representative capacity, is an admission of a party-opponent and, as such, is "not hearsay"). In the alternative, as Gonnerman contends, the statement attributed to McCline falls within a recognized hearsay exception, because it is a statement of McCline's then existing state of mind, *i.e.*, his belief that Gonnerman was too old to do cement work. *See* FED. R. EVID. 803(3) (defining one kind of statement not excluded by the hearsay rule, even though the declarant is available as a witness, as "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health). . . .").

Thus, the question is whether Gonnerman's statement of what McKeever said is inadmissible hearsay. The court finds that McKeever's statement, as related by Gonnerman, is not hearsay at all, because it is "a statement by a person authorized by the party to make a statement concerning the subject," within the meaning of FED. R. EVID. 801(d)(2)(C), and/or "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," within the meaning of FED. R. EVID. 801(d)(2)(D). There is no dispute that McKeever was an agent or employee of the defendants, acting within the scope of his agency or employment, when he acted as the conduit for the statement by McCline. McKeever made the statement of the reason that he had been told that McCline had decided to lay off Gonnerman when he was plainly authorized by McCline to tell

22

Gonnerman that he was laid off. Finally, McKeever's statement also falls within the state of mind hearsay exception, because his statement reflects his understanding of the reason that Gonnerman was being laid off. *See* FED. R. EVID. 803(3) (defining the state of mind exception).

Because each "layer" of possible hearsay here either is not hearsay or is subject to a hearsay exception, Gonnerman's "direct" evidence of age discrimination is admissible and may be sufficient to generate genuine issues of material fact on the defendants' motive.

      *c.*      *Is summary judgment appropriate on the ground that the "direct" evidence is not credible?*

The defendants' first ground for summary judgment was actually that Gonnerman's "direct" evidence of age-discriminatory animus is simply "not credible," where McCline denies making the underlying statement and McKeever denies relaying any such statement to Gonnerman. Such an argument for summary judgment, however, is unavailing. As the court noted above, "because [the courts] view the facts in the light most favorable to the non-moving party [on summary judgment], [courts] do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller*, 383 F.3d at 784. Rather than "attempt[ing] to determine the truth of the matter . . . the court's function is to determine whether a dispute about a material fact is genuine." *Quick*, 90 F.3d at 1376-77. Here, Gonnerman's testimony of what he was told was the reason for his lay off provides a real basis in the record for his assertion of "direct" evidence, notwithstanding McCline's denial of ever making the statement in question or McKeever's denial that he ever relayed such a statement by McCline to Gonnerman. *Hartnagel*, 953 F.2d at 395 (an issue of material fact is *genuine* if it has a real basis in the record). Therefore, the defendants are not entitled to summary judgment on the ground that Gonnerman's "direct" evidence is not credible.

### d. Is there a jury question on whether the defendants would have made the same decision absent age discrimination?

The defendants also argue, albeit in the context of what they assert is a "circumstantial" case of age discrimination, that Gonnerman has failed to generate a genuine issue of material fact to rebut their assertion of a legitimate, non-discriminatory reason for Gonnerman's lay off, the company-wide RIF, *i.e.*, that Gonnerman has failed to generate a genuine issue of material fact of "pretext." Gonnerman responds to this argument, although he contends that he is asserting only a "direct" evidence case, by contending that the defendants have failed to show that they would have laid him off absent illegal age discrimination.

Placed in the context of a "direct" evidence case, the question of whether or not there are genuine issues of material fact on the defendants' explanation for their actions translates into whether or not there are genuine issues of material fact on the defendants' showing that they would have made the same decision without discrimination. *See Morgan*, 486 F.3d at 1043 (even if a jury finds "direct" evidence of discrimination, an employer can avoid liability by showing that it would have made the same decision without discrimination).[2] While the court agrees that the defendants have pointed to evidence indicating that Hansen and McHan were engaged in a RIF caused by an unprecedented shortage of work, Gonnerman has met his burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial" on whether or not the defendants would have made the same decision without consideration of his age. FED. R. CIV. P. 56(e); *Mosley*, 415 F.3d at 910

---

[2]The court will not consider at this time the question of whether the employer's assertion that it would have made the same decision is an affirmative defense in a "direct evidence" case that must be pleaded and proved.

24

("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik*, 47 F.3d at 957). As Gonnerman points out, there is evidence that there was still work that he was qualified for, capable of, and willing to do at the Dickinson County Courthouse project at the time of the layoff; evidence that he had worked for the defendants longer and was more experienced than some of the younger people who were retained through the RIF or were called back to work; evidence that the supposedly "objective" criteria for deciding which employees would be laid off were, in fact, "subjective"; evidence that no one ever told him at the time that the reason for his lay off was a shortage of work; and evidence that he adequately performed his duties, including supervisory duties. In light of the record evidence here, whatever the court's view of the matter, a jury question is presented as to whether the defendants would have made the same decision absent consideration of Gonnerman's age. *Quick*, 90 F.3d at 1376-77 (rather than "attempt[ing] to determine the truth of the matter . . . the court's function is to determine whether a dispute about a material fact is genuine").

The defendants are not entitled to summary judgment on Gonnerman's age discrimination claims.

### C. Constitutionality Of Summary Judgment

Gonnerman asserts, as an alternative argument, that granting summary judgment to the defendants would deny his right to trial by jury under the Seventh Amendment to the United States Constitution. Because the court finds that the defendants are not entitled to summary judgment on Gonnerman's age discrimination claim, the court need not reach this argument.

25

Nevertheless, this court will observe that, particularly in employment discrimination and retaliation cases, district courts often appear to ignore the cautious approach to summary judgment dictated by Circuit law. *See Simpson*, 425 F.3d at 542 ("[S]ummary judgment is disfavored in employment discrimination cases."); *Woods*, 375 F.3d at 674 ("[S]ummary judgment should be used sparingly in employment discrimination cases. . . ."); *Crawford*, 37 F.3d at 1341 ("[S]ummary judgment should seldom be used in employment discrimination cases."). As the undersigned has observed before, appellate courts also often appear too eager to affirm district court decisions granting summary judgment in favor of employers, in disregard of this cautious standard. *See Kampouris v. St. Louis Symphony Soc'y*, 210 F.3d 845, 849-450 (8th Cir. 2000) (Bennett, J., dissenting) ("The federal courts' daily ritual of trial court grants and appellate court affirmances of summary judgment in employment discrimination cases across the land is increasingly troubling to me."). When courts maintain their proper regard for the role of summary judgment to eliminate only those claims for which no reasonable juror could find factual support, regardless of the court's disbelief of the pertinent factual allegations, then summary judgment does not trespass on the Seventh Amendment right to trial by jury of factual disputes. On the other hand, when courts abandon their proper role, they fail in their duty to be the jealous guardians of the fundamental and sacred right to trial by jury. *Jacob v. New York*, 315 U.S. 752, 752-53 (1942) ("The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment. A right so fundamental and sacred to the citizen, whether guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts.").

26

Therefore, proper protection of the Seventh Amendment right to trial by jury is another reason that courts must approach summary judgment in employment discrimination cases with appropriate caution.

### III.  CONCLUSION

Gonnerman has presented admissible "direct" evidence that he was laid off because of his age consisting of a statement of the decisionmaker, McCline, conveyed to him by his supervisor, McKeever, that McCline had decided to lay him off because he was "too old to do cement work."  Gonnerman has also presented sufficient evidence to generate genuine issues of material fact on the question of whether the defendants would have made the same decision to lay him off without improper consideration of his age.  That being so, the defendants' motion for summary judgment will be denied, and this matter will proceed to trial.

THEREFORE, the defendants' August 31, 2007, Motion For Summary Judgment (docket no. 17) is **denied**  in its entirety.

**IT IS SO ORDERED.**

**DATED** this 26th day of October, 2007.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

Case 5:06-cv-04064-MWB   Document 31   Filed 10/26/07   Page 27 of 27